Kevin M. Hall
4626 17th St.
San Francisco, CA 94117
(408) 368-9019
kevinmichaelhall@gmail.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **KEVIN M. HALL**, an individual,<br><br>       Plaintiff,<br><br>**v.**<br><br>**CARLOS A. GARCIA**, in his official capacity as Superintendent of the San Francisco Unified School District,<br><br>       Defendant. | Case No.:  C 10-03799 RS<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing:<br><br>Date:    January 6, 2011<br>Time:    1:30pm<br>Crtrm.:  3<br><br><br>(The Honorable Richard Seeborg) |

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS

i

# TABLE OF CONTENTS

THE RIGHT TO BEAR ARMS…………………………………………………………….. 1

LEGISLATIVE INTENT……………………………………………………………………3

LEVEL OF SCRUTINY…………………………………………………………………….4

      STRICT SCRUTINY………………………………………………………………...5

            COMPELLING GOVERNMENTAL INTEREST………………………..6

            NARROWLY TAILORED…………………………………………...…..6

            LEAST RESTRICTIVE MEANS……………………………………......7

      INTERMEDIATE SCRUTINY……………………………………………...7

      SCRUTINY SUMMARY……………………………………………………...8

SCHOOL ZONES AS SENSITIVE PLACES…………………………………………......9

      ARBITRARY SIZE……………………………………………………………10

      ALWAYS APPLICABLE……………………………………………………. 10

      RIFLES AND SHOTGUNS…………………………………………………..10

      LICENSE TO CARRY CONCEALED WEAPONS……………………….…11

      ON-CAMPUS SHOOTING RANGES……………………………………….11

      SCHOOL ZONES IN OTHER STATES…………………………………....12

      SENSITIVE PLACE SUMMARY…..…………………………………….....13

FIREARMS FOR SELF-DEFENSE IN SCHOOL ZONES…………………………….13

THE RIGHT TO SELF-DEFENSE……………………………………………….….......14

CONCLUSION………………………………………………………………………….16

EXHIBIT A…………………………………………………………………………….17

EXHIBIT B…………………………………………………………………………….20

EXHIBIT C…………………………………………………………………………….20

Plaintiff's Opposition to Defendant's                    ii
Motion for Judgment on the Pleadings -
C-10-3799 RS

TABLE OF AUTHORITIES

**SUPREME COURT CASES**

*District of Columbia v. Heller*
> 128 S. Ct. 2783 (2008)……………………………………………………... *Passim*

*Muscarello v. United States*
> 524 U.S. 125 (1998)……………………………………………………....15

*McDonald v. City of Chicago*
> 130 S. Ct. 3020 (2010)…………..…………………………………*Passim*

*Nyquist v. Mauclet*
> 432 U.S. 1 (1977)…………………………………………………….....8

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
> 460 U.S. 37 (1983)……………………………………………………...6

*San Antonio Indep. Sch. Dist. v. Rodriguez*
> 411 U.S. 1 (1973)……………………………………………………….6

*Turner Broad. Sys. v. FCC*
> 512 U.S. 622 (1994)……………………………………………………8

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*
> 536 U.S. 150 (2001)…………………………………………………….....4

**FEDERAL COURT CASES**

*Nordyke v. King*
> Case No. 07-15763………………………………………………………...4

*U.S. v. Lewis*
> Crim. No. 08-45, 2008 WL 5412013, *2 (D.V.I. Dec. 24, 2008)……………2, 9

**STATE CASES**

*Andrews v. State*
> 50 Tenn. 165 (1871)……………………………………………………1

*Nunn v. State*
> 1 Ga. 243 (1846)……………………………………………………….1

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS

iii

*State v. Chandler*
>5 La. Ann. 489 (1850)…………………………………………………………..1

*State v. Reid*
>1 Ala. 612 (1840)………………………………………………………………..2

**OTHER AUTHORITIES**

California Assembly Committee on Public Safety, AB 645, April 20, 1993
>http://leginfo.ca.gov/pub/93-94/bill/asm/ab_0601-
>0650/ab_645_cfa_930419_124437_asm_comm...................................................3

Cal. Penal Code § 626.9……………………………………………………...........3

Cal. Penal Code § 12031…………………………………………………..…...…..7, 8

Cal. Penal Code § 12050…………………………………………………………11

California Senate Floor, AB 645, August 16, 1994
>http://leginfo.ca.gov/pub/93-94/bill/asm/ab_0601-
>0650/ab_645_cfa_940816_170727_sen_floor.....................................................3

Cesare Beccaria, "On Crimes and Punishments"………………………………....16

Columbine Angels Website
>http://www.columbine-angels.com/School_Violence.htm……………………… 4

Eric Bailey, "O.C. Legislator, Gun Lobby Duel Over School Violence," *Los Angeles Times*, August 29, 1994……......………………………………………………….3

Eugene Volokh, "McDonald v. City of Chicago and the Standard of Review for Gun Control Laws"
>http://www.scotusblog.com/2010/06/mcdonald-v-city-of-chicago-and-the-
>standard-of-review-for-gun-control-laws/……………………………………...5

National School Safety and Security Services
>http://www.schoolsecurity.org/trends/school_violence.html………………….….4

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS

iv

THE RIGHT TO BEAR ARMS

The recent Supreme Court rulings of *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), and *McDonald v. City of Chicago,* 130 S. Ct. 3020 (2010), established that an individual has a right to keep and bear arms for purposes of self-defense. When bearing arms, one can carry an arm openly or one can carry an arm concealed. *Heller* took a definite stance on which of these two methods was constitutionally protected. In multiple instances *Heller* cites court rulings where prohibitions upon concealed carry were upheld to be constitutional:

> Aymette held that the state constitutional guarantee of the right to 'bear' arms did not prohibit the banning of concealed weapons
> *Heller* at 2809

> For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.
> *Id. at 2816*

The opinion of the court in *Heller* did not seek to correct these past rulings in any way. Instead Justice Scalia made several citations of how prohibitions against carrying of arms openly had been repeatedly found to be unconstitutional. *Heller* cites three different cases which all declare prohibitions of openly carrying of arms to be unconstitutional: *Nunn v. State,* 1 Ga., 243 (1846)*, Andrews v. State*, 50 Tenn., 165 (1871), and *State v. Chandler*, 5 La. Ann., 489 (1850).

It is clear that the Supreme Court intends open carry to be constitutionally protected activity under the Second Amendment. It is also clear that because *Heller* went to much effort to disparage one form of carry while praising the other, that carrying arms outside of one's home must be included in the right to bear arms. The discussion of how one could carry a firearm would otherwise be pedantic, since the state could not feasibly restrict the method of carry within one's home. Additionally, while *Heller* does speak of the right to keep and bear arms in the home (since the case focused on that), it never limits the right there. With regards to the operative clause of the Second Amendment, *Heller* wrote, "we find that they guarantee the individual right to possess and carry

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS

1

1    weapons in case of confrontation." *Heller* at 2797. *Heller* also bothers to quote a

2    Congressional Report from 1866 that mentions the use of firearms "to kill game for

3    subsistence, and to protect their crops from destruction by birds and animals," *id.*, at

4    2810, activities which cannot take place in the home. Perhaps the most convincing rebuke

5    of overbearing firearm laws comes from the Supreme Court of Alabama:

6         …the constitution, in declaring that every citizen has the right to bear arms in
7         defense of himself and the state, has neither expressly nor by implication denied
8         to the legislature the right to enact laws in regard to the manner in which arms
9         shall be borne. We do not desire to be understood as maintaining that in
10        regulating the manner of bearing arms the authority of the legislature has no other
11        limit than its own discretion. A statute which, under the pretense of regulating,
12        amounts to a destruction of the right, or which requires arms to be so borne as to
13        render them wholly useless for purposes of defense, would be clearly
14        unconstitutional.
15        *State v. Reid*, 1 Ala. 612 (1840)

16    It stands to reason that not only is openly carrying firearms constitutionally protected

17    activity, but openly carrying firearms *in public* is constitutionally protected as well.

18        Defendant's Motion makes several citations of firearm restrictions which have

19    been upheld, however not one involves open carry. Without exception, each case

20    involves concealed carry, which *Heller* repeatedly pointed to as not constitutionally

21    protected. In one a felon was found to have a loaded concealed handgun (*U.S. v.*

22    *Vongxay*, 594 F.3d 1111 (9th Cir. 2010)), another involves the attempt to bring a

23    concealed handgun upon an airplane (*U.S v. Davis*, 304 Fed. Appx. 473 (9th Cir. 2008)),

24    the third had a loaded, concealed handgun while driving (*U.S. v. Masciandaro*, 648 F.

25    Supp. 2d 779 (E.D. Va. 2009)), and the final citation involves a unlicensed driver

26    consuming illegal narcotics who had a loaded, concealed firearm (*U.S. v. Lewis*, Crim.

27    No. 08-45, 2008 WL 5412013, *2 (D.V.I. Dec. 24, 2008)). Plaintiff makes no effort to

28    argue that unlicensed concealed carry of handguns is constitutional or remotely relevant

29    to this case. Defendant's citations regarding concealed carry involve an activity not

30    protected by the constitution and are mostly irrelevant.

31        The California legislature has saw fit to restrict the open carry of loaded firearms

32    within incorporated city limits. However it has not prohibited the carry of unloaded

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS        2

1  firearms with loaded magazines. Since San Francisco is an urban environment where

2  violent crime is fairly commonplace, Plaintiff has sought to exercise his right to bear

3  arms for self-defense. In order to do so in any degree of practicality, Plaintiff was

4  required by state law to request written permission to carry within 1,000 feet of San

5  Francisco Unified School District (SFUSD) schools. Without this exemption Plaintiff

6  would be forced to keep track of every school teaching any grade from kindergarten to

7  12th grade and stay 1,000 feet away from the edge of the school property. Not only is this

8  exceedingly difficult to accurately do since there are no indicators as to where a school

9  zone begins but the very nature of schools means the zones are evenly distributed by

10  location, which makes steering clear equivalent to navigating a minefield.

11      Plaintiff seeks to merely be able to travel through these school zones while being

12  adequately capable of defending himself while following state law. Since Defendant has

13  deprived Plaintiff his right to bear arms as well as his right to self-defense, Defendant's

14  Motion should be denied.

15                           LEGISLATIVE INTENT

16      In 1995 the government of California enacted the Gun-Free School Zone Act[1]

17  (GFSZ Act). This law was undoubtedly spurred forward by a rash of gun violence at

18  schools across the country, however the law itself does not explicitly state the motivation

19  behind the GFSZ Act. A 1994 L.A. Times article about the bill summarized

20  Assemblywoman Doris Allen's reason for bringing forth the bill as being, "intended to

21  curb drive-by shootings and other violence that often mars neighborhoods around

22  schools."[2] A digest regarding AB 645 (the GFSZ Act)[3] stated the bill's purpose as being,

23  "A bulk of actual violence and crime occurs right around the campus. Having increased

24  penalties for crimes committed in a school zone will hopefully deter such actions around

25  our schools and provide a greater degree of safety for our children and teachers." The

25
[1] California Penal Code 626.9
[2] "O.C. Legislator, Gun Lobby Duel Over School Violence"
[3] Assembly Committee on Public Safety, AB 645, April 20, 1993

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -            3
C-10-3799 RS

1   purpose was slightly altered for the Senate Floor[4], "to increase penalties for unlawful

2   possession and reckless discharge of a firearm on the grounds of a public or private K-12

3   school." Neither of these stated purposes indicates that this law was intended to prevent

4   an individual from carrying a firearm for self-defense purposes. Since openly carrying

5   handguns has only become popular in the last decade, it is likely that the legislature did

6   not realize this bill would prevent individuals from acting to protect themselves from

7   harm.

8          Unfortunately, the GFSZ Act did not achieve the desired effect of reducing the

9   number of shootings at and around schools. There has been an increase in the incidence

10  of shootings at and around schools in California despite of state and federal laws

11  prohibiting firearms within 1,000 feet of schools. While determining the exact number of

12  shootings within a given time period is likely to be impossible, websites

13  schoolsecurity.org and columbine-angels.com have attempted to catalog this information.

14  Exhibit A is Plaintiff's gathering of California shootings on record and Exhibit B is a

15  chart displaying the number of incidents as well as a five-year trailing average. The data

16  shows a clear upward trend in the number of shootings at and near schools, despite the

17  GFSZ Act's existence.

18          It is extremely unlikely that any nefarious criminal intent on using a firearm to

19  harm schoolchildren would worry about the Gun-Free School Zone Act. The Supreme

20  Court has rejected arguments that lesser criminals would comply with similar restrictions;

21  "it seems unlikely that the lack of a permit would preclude criminals from knocking on

22  doors and engaging in conversations not covered by the ordinance." *Watchtower Bible &*

23  *Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 152 (2001). It is also

24  unlikely that a criminal wishing to use a handgun against another person would be

25  prevented from enacting his plan by the existence of this law. Thus, the only impact this

25

[4] Senate Floor, AB 645, August 16, 1994

Plaintiff's Opposition to Defendant's                                    4
Motion for Judgment on the Pleadings -
C-10-3799 RS

1   law truly has is upon law-abiding individuals who wish to openly carry an unloaded

2   firearm.

3   LEVEL OF SCRUTINY

4   Currently the Ninth Circuit Court of Appeals is deciding the case *Nordyke v. King*

5   which may decide which level of scrutiny should be used when analyzing laws restricting

6   the right to keep and bear arms. The *Heller* decision has removed rational-basis scrutiny

7   from the table in footnote 27:

8   But rational-basis scrutiny is a mode of analysis we have used when evaluating
9   laws under constitutional commands that are themselves prohibitions on irrational
10  laws. In those cases, 'rational basis' is not just the standard of scrutiny, but the
11  very substance of the constitutional guarantee. *Obviously, the same test could not*
12  *be used to evaluate the extent to which a legislature may regulate a specific,*
13  *enumerated right*, be it the freedom of speech, the guarantee against double
14  jeopardy, the right to counsel, *or the right to keep and bear arms*.
15  *Heller*, at 2818 (internal citations omitted, emphasis added)

16  *Heller* also rejected any "interest-balancing" approach proposed by Justice Breyer:

17  We know of no other enumerated constitutional right whose core protection has
18  been subjected to a freestanding "interest-balancing" approach. The very
19  enumeration of the right takes out of the hands of government -- even the Third
20  Branch of Government -- the power to decide on a case-by-case basis whether the
21  right is *really worth* insisting upon. A constitutional guarantee subject to future
22  judges' assessments of its usefulness is no constitutional guarantee at all.
23  Constitutional rights are enshrined with the scope they were understood to have
24  when the people adopted them, whether or not future legislatures or (yes) even
25  future judges think that scope too broad.
26  *Id.,* at 2821

27  In discussing this rejection of a balancing approach, constitutional scholar Eugene

28  Volokh wrote, "this suggests that the government might not be able to prevail with

29  'reducing danger' arguments at all."[5] Defendant's decision to not give Plaintiff written

30  permission to enter the school zones of SFUSD schools fails under either intermediate or

31  strict scrutiny.

32  STRICT SCRUTINY

32
[5] "McDonald v. City of Chicago and the Standard of Review for Gun Control Laws"

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS                                    5

1    Strict scrutiny has traditionally been used to apply to fundamental constitutional

2    rights. In order to pass strict scrutiny a law or policy must be justified by a compelling

3    governmental interest, be narrowly tailored, and to use the least restrictive means for

4    achieving the interest. *Heller* chose to quote St. George Tucker's version of Blackstone's

5    Commentaries thusly:

6    This may be considered as the true palladium of liberty…. The right to self-
7    defence is the first law of nature: in most governments it has been the study of
8    rulers to confine the right within the narrowest limits possible. Wherever standing
9    armies are kept up, and the right of the people to keep and bear arms is, under any
10   colour or pretext whatsoever, prohibited, liberty, if not already annihilated, is on
11   the brink of destruction.

12   *Heller* at 2805

13   *McDonald* continued along this line by identifying the right to keep and bear arms as

14   fundamental:

15   A survey of the contemporaneous history also demonstrates clearly that the
16   Fourteenth Amendment's Framers and ratifiers counted the right to keep and bear
17   arms among those fundamental rights necessary to the Nation's system of ordered
18   liberty.

19   *McDonald* at 3025

20   The strong words used in both of these decisions are used to point to the use of strict

21   scrutiny, since when a law or state action interferes with a "fundamental constitutional

22   right" then it is subject to "strict judicial scrutiny." *San Antonio Indep. Sch. Dist. v.*

23   *Rodriguez*, 411 U.S. 1, 17 (1973); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,

24   460 U.S. 37, 54 (1983). The Supreme Court is clearly instructing that strict scrutiny

25   should be used when analyzing restrictions upon the right to keep and bear arms.

26                          COMPELLING GOVERNMENTAL INTEREST

27   Defendant heavily relies upon the governmental interest in protecting

28   schoolchildren, but this interest is never discussed in depth. Plaintiff readily admits that

29   government has an interest in protecting all individuals. However this case revolves

30   around schools engaged in kindergarten to 12th grade education, so an analysis regarding

31   this specific interest must be made.

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS                                          6

1    There is nothing in the record to indicate that children *while engaged in education*

2    are more deserving of protection than any other person engaged in his or her daily life.

3    Defendant has offered nothing to argue that the act of learning poses additional danger to

4    the children engaged in it. The only argument that has been presented by Defendant's

5    Motion is that children at school are defenseless. However any law-abiding individual

6    confronted by a gunman while in a school zone has been made defenseless by the GFSZ

7    Act unless he has obtained written permission by the appropriate superintendent. The law

8    in question restricts the rights of adults in order to attempt to protect schoolchildren. A

9    law that would establish a better governmental interest would be to significantly increase

10   the punishment of those who threaten or injure children with a firearm.

11                              NARROWLY TAILORED

12   The GFSZ Act may be many things, but it is not narrowly tailored. Assuming the

13   governmental interest of protecting schoolchildren is valid, the statute is still overbroad.

14   The 1,000 foot distance is excessive, disallowing self-defense (outside of restraining

15   order cases) is absolutely misguided, and allowing for loaded, concealed handguns while

16   preventing unloaded openly carried handguns lacks logic. In addition the law allows for

17   unloaded rifles and shotguns to be carried within a school zone provided that ammunition

18   isn't attached in a manner where the weapon could be fired. When one considers that

19   rifles have traditionally been offensive weapons, and handguns defensive, there is no

20   justification for the current tailoring of the law. In short, there is no hope for the GFSZ

21   Act to be narrowly tailored.

22                              LEAST RESTRICTIVE MEANS

23   There are a great number of ways the law could be less restrictive: any person

24   legally allowed to own a firearm could be given written permission to enter a school

25   zone, the school zone could be 50 feet (where one could actually see the school) instead

26   of 1,000 feet, unloaded weapons could be allowed to be carried in holsters, a self-defense

27   exception could exist outside of the restraining order scenario. The current

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS

7

1   implementation of the law severely restricts important individual rights and effectively

2   disarms residents of cities – often the people who most benefit from self-defense tools.

3                                    INTERMEDIATE SCRUTINY

4            Under intermediate scrutiny the law in question must be shown to further an

5   important governmental interest in a way that is substantially related to that interest.

6   Defendant puts forth no argument that explains how preventing law-abiding individuals

7   from openly carrying unloaded handguns 900 feet away from an elementary school

8   substantially relates to an important governmental interest. Not only is a firearm required

9   to be unloaded (where it is harmless), but peace officers can perform an unloaded check

10  on any person open carrying[6]. Even if Plaintiff had obtained written permission to openly

11  carry an unloaded handgun in a school zone, he could only load the firearm if he believed

12  "that the person or property of himself or herself or of another is in immediate, grave

13  danger and that the carrying of the weapon is necessary for the preservation of that

14  person or property"[7]. Based on these legal restrictions Defendant must either disprove the

15  existence of the right to self-defense, or must assume that Plaintiff would violate the law

16  after spending much time and effort to simply abide by it. Defendant's Motion does

17  neither.

18           If the goals of the GFSZ Act meet the level of important governmental interest,

19  Defendant must still show that the law in question has a substantial impact on meeting

20  those goals. Defendant has performed no such analysis and has failed to provide evidence

21  that his denial of Plaintiff has any actual role in achieving the goals discussed in his

22  Motion. Government "must demonstrate that the recited harms are real, not merely

23  conjectural, and that the regulation will in fact alleviate these harms in a direct and

24  material way." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) (plurality opinion).

25  The discussion of the incident rate of school shootings in California, *supra* at 4*,* easily

26  shows that a substantial effect has not been achieved by the GFSZ Act, and so

26
[6] California Penal Code 12031(e)
[7] California Penal Code 12031(j)(1)

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -        8
C-10-3799 RS

1   Defendant's arguments under intermediate scrutiny also must fail. In *Nyquist v. Mauclet,*

2   432 U.S. 1 (1977), while the Supreme Court admitted that there was a cost of including

3   aliens for assistance programs, it refused to acknowledge the state of New York's

4   governmental interest of saving money since the amount was minimal. Similarly, even if

5   intermediate scrutiny is appropriate, the act of Plaintiff carrying an unloaded firearm

6   presents no amount of danger to children.

7                               SCRUTINY SUMMARY

8          Defendant has failed to show that his denial issuing written permission to Plaintiff

9   meets strict scrutiny, let alone intermediate scrutiny. Denying Plaintiff is not narrowly

10  tailored, not the least restrictive means of achieving Defendant's argued interests, and

11  does not substantially impact the stated goals. Defendant's actions are incapable of being

12  defended under either higher form of scrutiny and his Motion should be denied.

13                      SCHOOLS ZONES AS SENSITIVE PLACES

14         Prohibitions of weapons in sensitive places have been acknowledged by the

15  Supreme Court as being "presumptively lawful regulatory measures." *Heller* specifically

16  mentions government buildings and schools as being two such sensitive places, but

17  declines to offer guidance on what traits a sensitive place may exhibit. Locations such as

18  courts, prisons, and secure airport areas all have one thing in common: they have security

19  checkpoints at all locations that prevent weapons from entering. Schools on the other

20  hand generally lack such stringent security measures.

21         So why did the Supreme Court mention schools? Schools are locations that

22  belong to the young. The only adults who find themselves on school property on a regular

23  basis are volunteering or working with children to further their education. The majority of

24  adults spend little to no time on school property and Plaintiff can think of only a single

25  time in the past two years when he has set foot on the school grounds of a San Francisco

26  school. The Supreme Court must have recognized schools as a sensitive place because

27  they can easily be avoided by those choosing to bear arms.

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS                              9

1    San Francisco has so many schools as to make the entire city impractical to keep

2    and bear arms. Exhibit C is a map with a circle with 1,000 foot radius centered over every

3    K-12 school Plaintiff was able to find within San Francisco. The circles inscribed have a

4    radius of 1,000 feet, but every school zone would be larger than that since no school is a

5    single point in space. In any case, the circles of Exhibit C cover 32.3% of the total area of

6    San Francisco, or roughly a third of the entire city. Plaintiff rejects the argument that one

7    third of a major U.S. city can be declared to be a sensitive place where enumerated rights

8    are restricted. Plaintiff prays this Honorable Court also rejects such an argument.

9        In *U.S. v. Lewis*, the Court bound school zones to schools via *Heller*'s language

10   without further discussion. However if it is truly, "beyond peradventure that a school

11   zone…is precisely the type of location of which *Heller* spoke", *id*., then some reasoning

12   behind that assumption could have been given. Instead the Court drops the topic and

13   never returns. Plaintiff will now perform the necessary analysis of school zones in

14   relation to "sensitive places".

15                          ARBITRARY SIZE

16       The inherent attribute of school zones is their size, in this case, 1,000 feet. At

17   1,000 feet in size, a school with property dimensions of 200 feet by 200 feet would create

18   a school zone encompassing over 3.98 million square feet. The origin of the 1,000 feet in

19   the GFSZ Act has never been discussed in any scientific terms, instead it appears to be a

20   "nice round number". Usually the size of a school zone would be somewhat trivial, but

21   when the zone infringes upon an individual's right we must consider if the zone is

22   appropriately sized to balance any governmental interest with the rights of the people.

23       Defendant offers no argument of the school zone size as being appropriate,

24   perhaps because no such argument exists. Some handgun rounds have initial speeds of

25   over 1,000 feet per second, so it is unlikely that preventing a round from hitting a school

26   is the motivating factor behind the size of school zones. If we are to accept that the 1,000

27   feet distance is acceptable without any justification behind the number, then surely the

28   size of the school zone can be increased without any additional justification. It is

Plaintiff's Opposition to Defendant's                    10
Motion for Judgment on the Pleadings -
C-10-3799 RS

1    impossible to reconcile the texts of *Heller* and *McDonald* that speak of fundamental

2    rights, with this arbitrarily sized circle that denies them.

3                              ALWAYS APPLICABLE

4           The GFSZ Act has no exceptions that allow firearms to be carried if children are

5    not present at a school. Schools are only in session nine months of the year, and then only

6    for roughly a third of the day. Despite children only being present at schools for

7    approximately 25% of the time, law-abiding individuals are still restricted from carrying

8    unloaded handguns in exposed holsters in the middle of the night when no children are

9    present at the school.

10                             RIFLES AND SHOTGUNS

11          While the size of school zones is important, even more damning to Defendant's

12   argument is the GFSZ Act's allowance of rifles and shotguns to be lawfully brought to

13   the edge of school property. If schools and school zones were equally sensitive places,

14   then surely rifles would be prevented from entering school zones, not just school

15   grounds. Instead there is a clear delineation of what is definitely sensitive (school

16   grounds) and what is semi-sensitive (school zones). If protecting children really is the

17   goal of the GFSZ Act, then surely rifles (which are immensely more powerful) would be

18   prohibited. Schools and school zones are obviously being treated differently in this

19   regard, meaning even the California legislature recognizes that schools are sensitive

20   while the area around schools are less so.

21                  LICENSE TO CARRY CONCEALED WEAPONS

22          Under California law, not only are rifles allowed to be carried within school zones

23   but if an individual has a license to carry a concealed weapon (CCW), then carrying

24   loaded handguns upon school grounds is also lawful. The GFSZ Act states that, "This

25   section does not apply to…a person holding a valid license to carry the firearm pursuant

26   to…Section 12050"[8]. This allowance for activity that is not constitutionally protected

---

26

[8] California Penal Code 626.9(l). Section 12050 of the California Penal Code deals
with the issuing of licenses to carry concealed weapons.

Plaintiff's Opposition to Defendant's                     11
Motion for Judgment on the Pleadings -
C-10-3799 RS

1   questions the sensitive nature of school grounds, let alone school zones. There are no

2   such allowances for CCW holders to enter courtrooms, prisons, or the secure area of

3   airports because these areas are absolutely sensitive.

4         On one hand the GFSZ Act is saying schools are so sensitive as to prevent

5   constitutionally protected fundamental rights from taking place anywhere closer than

6   1,000 feet of a school. On the other hand the law allows for loaded, concealed firearms to

7   be carried anywhere on school grounds. The logical fallacy revealed by these two rules is

8   even further enhanced when one recalls that *Heller* disparaged concealed carry, but

9   defended open carry. Plaintiff's request for written permission to travel through school

10   zones is a request to engage in constitutionally protected activity, and Defendant's denial

11   is unfounded when unconstitutional activity with loaded firearms is allowed.

12                  ON-CAMPUS SHOOTING RANGES

13         The GFSZ Act also allows for firearms to be brought on to school campus in

14   order to use an existing shooting range. The sensitive nature of schools is clearly not

15   sacrosanct if the GFSZ allows children to bring firearms on to school grounds, load the

16   firearms, and fire them. If firearms were endangering children wouldn't the California

17   legislature strive to keep the use of firearms as far away from school grounds as possible?

18   Surely courtrooms, prisons, and sterile areas of airports do not allow firearms to be

19   brought in by children and then utilized. This difference between these "sensitive places"

20   speaks volumes regarding the degree of sensitivity being applied to schools.

21                 SCHOOL ZONES IN OTHER STATES

22         Different states have treated schools in a variety of different manners with respect

23   to firearms. Ten states allow firearm license holders to enter school property: Alabama,

24   California, Delaware, Michigan, Missouri, New Hampshire, Oregon, Rhode Island, Utah,

25   and Wyoming. In addition to the states that allow carry of firearms upon school grounds,

26   there are at least 26 states that do not establish a gun-free school zone: Alaska, Arizona,

27   Colorado, Connecticut, Delaware, Idaho, Kansas, Kentucky, Michigan, Missouri,

28   Montana, Nebraska, Nevada, New Hampshire, North Dakota, Ohio, Oregon,

Plaintiff's Opposition to Defendant's          12
Motion for Judgment on the Pleadings -
C-10-3799 RS

1   Pennsylvania, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West

2   Virginia, and Wyoming[9]. It is difficult to conclude that schools and school zones are

3   presumed to be sensitive places when 20% of states allow loaded firearms to be carried

4   upon school grounds and the majority of states allow loaded firearms to be carried up to

5   the edge of school grounds. In addition, the states that do prohibit the carry of firearms in

6   or around schools have seemingly all enacted such prohibitions within the past 20 years.

7   There is clearly disagreement amongst the states regarding whether or not schools and

8   school zones are sensitive places, and if they are, then to what degree. The phenomenon

9   of prohibiting weapons at or around schools has been extremely recent and has been

10  applied in widely differing manners.

11                          SENSITIVE PLACE SUMMARY

12         California's Gun-Free School Zone Act allows for so many exceptions as to

13  preclude it from being sensitive. The GFSZ Act aims to protect children from openly

14  carried, unloaded firearms by keeping them over 1,000 feet away, all while allowing

15  loaded concealed firearms into the classroom. The size of the zones is arbitrary and

16  intrusive. Children are allowed to bring firearms upon school campus to utilize shooting

17  ranges. High-powered rifles, which are offensive weapons, are not restricted by school

18  zones and can be brought right up to the edge of school grounds. These under inclusive

19  and overbroad characteristics are not representative of what a sensitive place is. For these

20  reasons, California school zones are not sensitive places and Defendant's actions violate

21  Plaintiff's right to keep and bear arms. Defendant's Motion should be denied.

22                  FIREARMS FOR SELF-DEFENSE IN SCHOOL ZONES

23         Without written permission from the Defendant, Plaintiff's only legal option to

24  transport a handgun through a school zone would be in a "secure container which is fully

25  enclosed and locked by a padlock, key lock, combination lock, or similar locking

25

[9] Due to the difficulty of proving something is not illegal, Plaintiff does not assert
this list to be exhaustive

Plaintiff's Opposition to Defendant's            13
Motion for Judgment on the Pleadings -
C-10-3799 RS

1  device."[10] *Heller* also spoke of firearms lawfully required to be in a locked state, "In sum,

2  we hold that the District's ban on handgun possession in the home violates the Second

3  Amendment, as does its prohibition against rendering any lawful firearm in the home

4  operable for the purpose of immediate self-defense." *Heller*, at 2821-2822. Plaintiff is

5  similarly forced to render any handgun to be inoperable while within a school zone.

6         Even if Plaintiff could see into the future and knew a violent attack was imminent,

7  he would still be powerless to act as long as he remained in a school zone. Amazingly,

8  the GFSZ Act does not provide an individual with a lawful manner in which he could

9  defend himself with a handgun while in a school zone, outside of the realm of a current

10  restraining order against a specified individual. Even the simple action of unlocking the

11  container where the firearm was held would violate the GFSZ Act. If Plaintiff knew he

12  was outside of a school zone, at least he could unlock the container, and if there was an

13  "immediate, grave danger" to life then, and only then, could Plaintiff finally load

14  ammunition into his handgun.

15                        THE RIGHT TO SELF-DEFENSE

16         The right to self-defense has been regarded as a natural right since time

17  immemorial. *McDonald* verifies this thusly, "Self-defense is a basic right, recognized by

18  many legal systems from ancient times to the present day, and in *Heller*, we held that

19  individual self-defense is 'the *central component*' of the Second Amendment right."

20  *McDonald* at 3048. The Virginia Supreme Court similarly addressed the right, "The right

21  to life and to personal security is not only sacred in the estimation of the common law,

22  but it is inalienable." *Martin v. Commonwealth*, 184 Va. 1009, 1019 (1946). The right to

23  self-defense isn't just the allowance to fight back against a better-armed assailant. It

24  provides that individuals should be capable of taking the life of the attacker if need be,

25  "That matter is the law of self-defence, the right to take the life of an assailant to preserve

26  one's own life. And the law stated is that when there is real danger the party assailed may

26
[10] California Penal Code 12026.1(c)

Plaintiff's Opposition to Defendant's          14
Motion for Judgment on the Pleadings -
C-10-3799 RS

1    take the life of his assailant." *Allen v. United States*, 150 U.S. 551, 565. The Defendant's

2    denial of Plaintiff's request has effectively stripped Plaintiff of his right to self-defense

3    where he needs it the most: public places.

4          The California Attorney General Report entitled, "Crime in California 2009"[11]

5    showed that firearms were used to commit 31.1% of robberies[12] and 70.5% of

6    homicides[13]. The report also showed that highway robbery (occurring in streets, parks,

7    parking lots, sidewalks, etc.) was the most prevalent type at 48.7%[14] while the report

8    "Homicide in California 2008"[15] (the most recent available) indicated that 36.8% of

9    homicides were committed on streets and sidewalks. From these statistics, it is clear that

10   there is a necessity for self-defense tools to be available for use on streets and sidewalks.

11         Defendant's Motion makes numerous attempts to convince this Court that the

12   Second Amendment only extends the right to keep and bear arms to the home. While

13   *Heller*'s holding only addressed the case before it (whether or not the District of

14   Columbia could ban handguns in the home), *Heller* spent significant amount of time

15   discussing the "bear" portion of the Second Amendment. At no point does *Heller* give

16   any indication that the right to carry arms for self-defense does not apply outside the

17   home, instead, as discussed *supra* at 1-2, it gives examples of purely outdoor activity.

18   When analyzing the meaning of "carries a firearm" the Opinion of the Court quoted

19   Justice Ginsburg from *Muscarello v. United States*, 524 U.S. 125 (1998), "[s]urely a most

20   familiar meaning is, as the Constitution's Second Amendment…indicate[s]: 'wear, bear,

21   or carry…upon the person or in the clothing or in a pocket, for the purpose…of being

22   armed and ready for offensive or defensive action in a case of conflict with another

23   person." Id., at 143 (dissenting opinion). It is impossible to believe that the *Heller* court

---

23

[11] http://ag.ca.gov/cjsc/publications/candd/cd09/preface.pdf
[12] Ibid., at 8
[13] Ibid., at 5
[14] Ibid., at 7
[15] http://ag.ca.gov/cjsc/publications/homicide/hm08/preface.pdf

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -          15
C-10-3799 RS

1  would uphold the right to self-defense in the home while disarming individuals on the

2  streets, where they are statistically the most likely to be subject to robbery.

3          Defendant makes various citations to cases restricting activity near a school

4  (selling beer, obtaining a liquor license, convicted sex offenders taking up residence,

5  creating noise to disrupt school), but only one can be remotely justified as being a right:

6  the right to watch an adult movie. In *City of Renton v. Playtime Theaters Inc.,* 475 U.S.

7  41, 50 (1986), the Supreme Court held that a zoning ordinance restricting adult theaters

8  1,000 feet from schools was constitutional since it complied with a narrowly tailored

9  time, place, and manner restriction. Defendant has offered no argument that a time, place,

10  and manner restriction is applicable to the right to keep and bear arms. However,

11  supposing such an analysis was applicable, it would still fail since the GFSZ Act applies

12  whether or not children are present at school, and hence the law is not narrowly tailored.

13  More importantly though, while first amendment activity can convey the same message

14  today or tomorrow, defending ones life is something that can only take place when being

15  attacked. Plaintiff can't defend himself from armed robbery the following day outside of

16  a school zone, he must act immediately to prevent the loss of his life. Clearly such time,

17  place, and manner restrictions are inapplicable to self-defense.

18          The right to keep and bear arms is a right, by its very nature, is one that cannot be

19  rendered to be completely safe. It is a right that assures innocent men will always have

20  the option of violence against those who wish to jeopardize their own lives. Cesare

21  Beccaria wrote one of the more famous summaries surrounding the restrictions upon the

22  right to bear arms in his seminal treatise on legal reform, *On Crimes and Punishments*:

23          The laws that forbid the carrying of arms...disarm only those who are neither
24          inclined nor determined to commit crimes. Can it be supposed that those who
25          have the courage to violate the most sacred laws of humanity...will respect the
26          less important and arbitrary ones... Such laws make things worse for the assaulted
27          and better for the assailants, they serve rather to encourage than to prevent
28          homicides, for an unarmed man may be attacked with greater confidence than an
29          armed man.

Plaintiff's Opposition to Defendant's
Motion for Judgment on the Pleadings -
C-10-3799 RS                                          16

1   It is the hope of the Plaintiff that these "less important and arbitrary" laws can be brought

2   into line behind the right of every man to defend himself.

3                                                   CONCLUSION

4          The wholesale restriction of an entire set of rights within a specified area is not an

5   intrusion this Court should take lightly. If firearms can be forced to be kept in an

6   inoperable state within arbitrarily sized school zones, even when attack is imminent, then

7   surely other enumerated rights can be deprived around sensitive areas such as airports,

8   government buildings, hospitals, prisons, or power plants. Are we to have private

9   property seized without just compensation in government building zones? Are we to see

10  our vehicles searched prior to entering an airport zone?

11         Plaintiff stands alongside the Defendant in wishing that schoolchildren will

12  forever be unharmed, but Plaintiff does not believe that an unmarked line encircling

13  learning institutions furthers that goal in any way. Defendant's Motion for Judgment on

14  the Pleadings does not put forth an argument that begins to surpass intermediate or strict

15  scrutiny. For these reasons, the Court should deny Defendant's Motion.

Plaintiff's Opposition to Defendant's                    17
Motion for Judgment on the Pleadings -
C-10-3799 RS