ROBIN B. JOHANSEN, State Bar No. 79084
THOMAS A. WILLIS, State Bar No. 160989
KARI KROGSENG, State Bar No. 215263
REMCHO, JOHANSEN & PURCELL, LLP
201 Dolores Avenue
San Leandro, CA  94577
Phone:  (510) 346-6200
Fax:  (510) 346-6201
Email:  rjohansen@rjp.com

Attorneys for Defendant
CARLOS A. GARCIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN M. HALL, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>CARLOS A. GARCIA, in his official capacity as Superintendent of the San Francisco Unified School District,<br><br>    Defendant. | No.:  C 10-03799 RS<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><u>Hearing:</u><br><br>Date:    January 6, 2011<br>Time:   1:30 p.m.<br>Crtrm.:  3<br><br>(The Honorable Richard Seeborg) |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................................ 1

I.   PLAINTIFF MISREADS THE SUPREME COURT'S DECISIONS REGARDING
     THE APPROPRIATE STANDARD OF REVIEW ........................................................ 2

II.  SECTION 626.9 IS VALID EVEN UNDER A TRADITIONAL BALANCING TEST ............. 5

     A.   Strict Scrutiny Does Not Apply ....................................................................... 5

     B.   Section 626.9 Satisfies Intermediate Scrutiny as a "Reasonable Time, Place, and
          Manner" Regulation ........................................................................................ 7

          1.   The governmental interest is not only significant, but compelling ........................ 8

          2.   The regulation is narrowly tailored to the government's interest ........................ 10

          3.   Practices in other states ................................................................... 13

          4.   The wisdom or efficacy of the Act are issues for the Legislature, not the
               courts ........................................................................................... 13

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Burdick v. Takushi* ............................................................................................................ 6, 7
    504 U.S. 428 (1992)

*City of Renton v. Playtime Theaters, Inc.* ............................................................................ 5
    475 U.S. 41 (1986)

*Dist. of Columbia v. Heller* ........................................................................................ passim
    554 U.S. 570 (2008)

*Ginsberg v. State of New York* ............................................................................................ 9
    390 U.S. 629 (1968)

*Grayned v. City of Rockford* ........................................................................................... 4, 5
    408 U.S. 104 (1972)

*Illinois State Bd. of Elections v. Socialist Workers Party* .................................................. 6
    440 U.S. 173 (1979)

*Larkin v. Grendel's Den, Inc.* ............................................................................................. 5
    459 U.S. 116 (1982)

*Lozano v. City of Hazleton* ............................................................................................ 9, 10
    620 F.3d 170 (3d Cir. 2010)

*McDonald v. City of Chicago* ............................................................................... 3, 4, 6, 12
    130 S. Ct. 3020 (2010)

*People v. Yarbrough* ......................................................................................................... 12
    169 Cal.App.4th 303 (2008)

*Peruta v. County of San Diego* ............................................................................... 10, 12, 14
    No. 09CV2371-IEG, 2010 WL 5137137 (S.D. Cal. Dec. 10, 2010)

*S.D. Myers, Inc. v. City and County of San Francisco* ....................................................... 6
    253 F.3d 461 (9th Cir. 2001)

*U.S. v. Juvenile Male* ......................................................................................................... 9
    595 F.3d 885 (9th Cir. 2010)

*U.S. v. Lopez* ...................................................................................................................... 8
    514 U.S. 549 (1995)

*U.S. v. Marzzarella* .................................................................................................... passim
    614 F.3d 85, 89 (2010)

*U.S. v. Miller* ...................................................................................................................... 8
    307 U.S. 174 (1939)

**TABLE OF AUTHORITIES (continued)**

*W. Virginia State Bd. of Educ. v. Barnette* ........................................................................................ 5
  319 U.S. 624 (1943)

**STATUTES:**

18 U.S.C.
  § 922(q)(1)(C) ................................................................................................................ 9

Cal. Educ. Code
  § 38131(b) ................................................................................................................ 12, 13

Cal. Penal Code
  § 626.9 ............................................................................................................................ passim
  § 12001 ................................................................................................................................. 11
  § 12025.5 .............................................................................................................................. 11
  § 12031 ........................................................................................................................... 11, 12
  § 12050 .................................................................................................................................. 10

**OTHER AUTHORITIES:**

Cal. Const. art. I, § 28(f)(1) ................................................................................................................ 9

Joseph Blocher, *Categoricalism and Balancing in First and Second Amendment Analysis*,
  84 N.Y.U. L. Rev. 375 (2009) ............................................................................................... 2

Ruth Bader Ginsburg, *Supreme Court Discourse On The Good Behavior Of Lawyers:
  Leeway Within Limits*, 44 Drake L. Rev. 183 (1996) .......................................................... 4

Gerald Gunther, *Foreward: In Search of Evolving Doctrine on a Changing Court: A Model
  for a Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972) .................................................. 6

Darrell A.H. Miller, *Guns as Smut: Defending the Home-Bound Second Amendment*,
  109 Colum. L. Rev. 1278 (2009) .......................................................................................... 3

Kathleen M. Sullivan, *The Supreme Court, 1991 Term-Foreword: The Justices of Rules
  and Standards*, 106 Harv. L. Rev. 22 (1992) ...................................................................... 2

Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683 (2007) .................. 2, 7

# INTRODUCTION

Plaintiff's brief makes clear that he is seeking the right to openly carry an unloaded handgun with a loaded magazine in any school zone in San Francisco.[1] It is difficult to imagine a more provocative or disruptive manner of exercising one's Second Amendment rights, or one less likely to serve the right to self-defense upon which plaintiff bases his claim.

An open handgun in a school zone, where parents and children come and go, will inevitably disrupt the educational environment and make it far more dangerous, whether it happens during the school day when a report of a gun-carrying adult will shut down the school, or after school or during the evening, when schools are used for athletic activities or as community centers. Plaintiff claims his right to cause such disruption arises out of his need for self-defense, but he cannot possibly feel threatened around every school in the City nor will carrying an unloaded weapon, even with a loaded magazine on his person, afford him much protection. Plaintiff's complaint makes no attempt to assert any individual need for self-defense, nor does its Exhibit A, which is the letter plaintiff sent to Superintendent Garcia asking for an exemption from the requirements of Penal Code section 626.9.

Instead, plaintiff mounts a frontal assault on section 626.9, arguing that it violates the Second Amendment under either strict or intermediate scrutiny, that it is both overbroad and underinclusive, and even arbitrary. He offers self-created evidence that is not only inappropriate on a motion for judgment on the pleadings, but little more than inadmissible hearsay. And he argues that the reason the Supreme Court identified schools as sensitive places is "because they can easily be avoided by those choosing to bear arms." Opp. at 9.

All of these approaches to the newly minted individual right to bear arms are wrong. Despite the Supreme Court's refusal to define the scope of permissible government regulation in its recent Second Amendment cases, it has made very clear that state and local jurisdictions may prohibit the carrying of firearms—loaded or unloaded, concealed or not—in sensitive places like schools. The reason for this is obvious, and it has nothing to do with whether or not schools can be easily avoided by those who wish to carry firearms. It has to do with the fact that the State has not only a compelling

---

[1] Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings ("Opp.") at 2, 3.

DEF.'S REPLY IN SUPPORT OF MOT. FOR J. ON THE PLDGS. – NO.: C 10-03799 RS     1

interest but a responsibility to protect the children who are required to attend school. As demonstrated below, Penal Code section 626.9 is more than reasonably designed to do that.

I.

**PLAINTIFF MISREADS THE SUPREME COURT'S DECISIONS REGARDING THE APPROPRIATE STANDARD OF REVIEW**

Plaintiff argues that the Court has only two choices in deciding what standard of review to apply to Penal Code section 626.9: strict scrutiny or intermediate scrutiny. Opp. at 5. This is a false dichotomy and although understandable, it is one that overly simplifies the task before the Court in conducting judicial review.[2]

As numerous commentators have made clear, Supreme Court case law regarding regulation of constitutionally protected rights goes far beyond the traditional three-tiered approach of rational relationship, intermediate scrutiny, and strict scrutiny.[3] This scholarship has found its way into the debate over judicial review of gun regulation following the Supreme Court's decision in *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008). For example, Professor Adam Winkler, writing in the Michigan Law Review, cites abundant case law demonstrating that strict scrutiny is applied only to a few of the rights guaranteed by the Bill of Rights and even as to those, its application is rare.[4] He also demonstrates that state courts interpreting state constitutional provisions similar to the Second Amendment have not applied strict scrutiny or even heightened review to gun regulations.[5]

In a recent Second Amendment opinion, the Third Circuit Court of Appeals recognized that in *Heller*, the Supreme Court rejected the three-tiered balancing approach that plaintiff discusses

---

[2] We recognize that plaintiff is not an attorney and that he is unrepresented by counsel. He has, however, obviously done his homework and is familiar with the case law and the commentary that accompanies it.

[3] *See, e.g.*, Kathleen M. Sullivan, *The Supreme Court, 1991 Term—Foreword: The Justices of Rules and Standards*, 106 Harv. L. Rev. 22 (1992) and cases cited therein.

[4] Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683, 693-700 (2007).

[5] *Id.* at 686-87 & nn. 11-13; *see also* Joseph Blocher, *Categoricalism and Balancing in First and Second Amendment Analysis*, 84 N.Y.U. L. Rev. 375, 387-89 (2009) (discussing cases in which courts have held that particular speech or conduct is outside the scope of protection of a right recognized by the Bill of Rights).

and adopted instead a two-step approach to Second Amendment challenges:

> As we read *Heller*, it suggests a two-pronged approach to Second Amendment challenges. First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. *Cf. United States v. Stevens,* 533 F.3d 218, 233 (3d Cir. 2008), *aff'd* ___ U.S. ___, 130 S. Ct. 1577, 176 L.Ed.2d 435 (recognizing the preliminary issue in a First Amendment challenge is whether the speech at issue is protected or unprotected.) If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.
>
> *U.S. v. Marzzarella*, 614 F.3d 85, 89 (2010) (footnote omitted).

*Marzzarella* involved a challenge to a conviction for possession of an unmarked firearm in the home, requiring the court to go to the second prong of the two-part test. Here, however, there is no need to do so, because the Court has made clear that, in the *Marzzarella* court's words, schools are not "within the scope of the Second Amendment's guarantee." *Id*.

Both *Heller* and *McDonald v. City of Chicago*[6] made clear that *where* an individual wishes to exercise Second Amendment rights is extremely important to the scope of permissible regulation. Both cases focused on the importance of Second Amendment rights in the home for purposes of self-defense. *McDonald*, 130 S. Ct. at 3044 (describing as "our central holding in *Heller*" that "the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").[7] Thus, just as public streets and parks are to the First Amendment, the home is the quintessentially protected place for the exercise of Second Amendment rights under *Heller* and *McDonald.*

The further one strays from the home, however, the less protection there is: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as . . . 'laws forbidding the carrying of firearms in sensitive places such as schools and government

---

[6] 130 S. Ct. 3020 (2010) (holding that the Fourteenth Amendment incorporates the Second Amendment and makes it applicable against state and local governments).

[7] One commentator has suggested that the right to keep and bear arms, like the right to possess pornography, should be protected *only* when exercised in the home. Darrell A.H. Miller, *Guns as Smut: Defending the Home-Bound Second Amendment*, 109 Colum. L. Rev. 1278 (2009). There is no need for this Court to reach that question.

buildings' . . ." *McDonald*, 130 S. Ct. at 3047.[8] That statement should come as no surprise. It has long been established that under the First Amendment, schools and government buildings are nonpublic forums in which speech can be severely restricted.[9] In *Heller*, the Court recognized that they are "sensitive places" for purposes of the Second Amendment as well (554 U.S. at 626), and that in these places the government can—and does—prohibit the carrying of any kind of weapon except by individuals who have special permission to do so, such as bailiffs and campus police. Schools are, therefore, in a category where different Second Amendment rules apply than in the home, and those rules strongly favor government regulation.

        The high Court's words bear repeating: "[N]othing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools . . ." *Heller*, 554 U.S. at 626. *Heller* does not "cast doubt" on the State's right to *forbid the carrying of firearms* in schools. This is not merely a matter of regulating or prohibiting concealed weapons, as plaintiff suggests. Opp. at 1, 2. This is a matter of prohibiting the carrying of firearms entirely, whether they are concealed or not. In other words, the State can make the school completely off-limits for purposes of the Second Amendment.[10]

---

[8] The Court has also carved out whole categories of persons (felons and the mentally ill) who do not possess Second Amendment rights. *McDonald*, 130 S. Ct. at 3047. It has also declared that weapons not "in common use at the time" the Second Amendment was adopted or weapons that fall within the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" are outside the scope of Second Amendment protection. *Heller*, 554 U.S. at 627.

[9] *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 116-19 (1972) (upholding ordinance prohibiting willfully making a disruptive noise or diversion on grounds adjacent to school when classes are in session).

When it comes to exercising one's First Amendment rights in our courts, Justice Ginsburg put it best: "[N]o one could seriously maintain a lawyer has a 'free speech' right to tell the jury the contents of documents ruled inadmissible by the court, . . . Nor may a lawyer escape control for dishonest or disruptive behavior—for example, framing frivolous pleadings . . ." Ruth Bader Ginsburg, *Supreme Court Discourse On The Good Behavior Of Lawyers: Leeway Within Limits,* 44 Drake L. Rev. 183, 192 (1996) (Lecture of Justice Ginsburg).

[10] In a footnote, the *Heller* Court explained that its list of "presumptively lawful regulatory measures" was merely exemplary and not exhaustive. 554 U.S. at 627 n.26. In *Marzzarella*, the Third Circuit concluded that the Court's reference to the measures as "presumptively lawful" meant that they involve conduct outside the scope of the Second Amendment, not that they would pass muster under any level of scrutiny. 614 F.3d at 91.

That leaves the question of whether the State may also forbid the carrying of firearms in a protective zone around a school. It would make little sense for the Court to conclude that it cannot. First, as plaintiff points out, a firearm can be used from a distance to penetrate school windows or schoolyards. Opp. at 10. Some kind of protective zone is necessary due to the very nature of these weapons. Second, there are other obvious justifications for a protective zone around schools: the fact that children are coming and going there, often in large numbers and often unaccompanied by adults, as well as the fact that any disturbance, such as the sight of an open handgun near a school, will inevitably be disruptive. As discussed in defendant's opening brief, the Supreme Court has long recognized the legitimacy of such protective zones around schools. Def.'s Mot. For J. on the Pleadings ("Def.'s Br.") at 7-8 (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 50 (1986) (adult theaters); *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 121 (1982); *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)). The Court's decisions in *City of Renton* and *Grayned* are particularly instructive, because each involved speech protected by the First Amendment, which arguably serves as the cornerstone of our democracy.[11] Yet the Court approved legislation that prohibited adult theaters within a 1,000 foot zone of, among other things, a school in *City of Renton*, and an even less well-defined ordinance that prohibited disruptive noise or diversion on grounds adjacent to a school in *Grayned*. It is hard to imagine that the Court would disapprove of a similar zone designed to protect children from death or serious injury by gunshot.

## II.

### SECTION 626.9 IS VALID EVEN UNDER A TRADITIONAL BALANCING TEST

**A.     Strict Scrutiny Does Not Apply**

Plaintiff denies that the Court has created a categorical exception for schools and argues instead that this Court should review a prohibition on "open carry" of an unloaded firearm within a

---

[11] Justice Jackson's famous words best capture this point: "[I[f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

school zone using the strict scrutiny test.[12]  Opp. at 6-8.

Plaintiff correctly points out that the *Heller* Court rejected rational basis review (554 U.S. at 628 n. 27), but he makes no attempt to square the Court's "sensitive places" discussion with the purpose behind strict scrutiny, which usually comes into play when a legislature's motives are suspect and which, in Professor Gunther's words, is "'strict' in theory and fatal in fact."[13]  It certainly makes no sense to argue that when the Court said, "nothing in our opinion should be taken to cast doubt" on long-standing regulations forbidding guns in schools, it really meant to subject those regulations to strict scrutiny.

Plaintiff makes the argument nonetheless, focusing on the Court's description of Second Amendment rights as "fundamental" in *Heller* and *McDonald*.  Opp. at 6.  But as demonstrated above, strict scrutiny does not apply to every law that touches upon a fundamental right.  The *Heller* Court made this clear when it said:

> Like most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

554 U.S. at 626.[14]

Moreover, even with fundamental rights, the Court will look to see what degree of burden the regulation at issue places on that right.  For example, the Supreme Court has held that "voting is of the most fundamental significance under our constitutional structure." *Illinois State Bd. of Elections* v. *Socialist Workers Party*, 440 U.S. 173, 184 (1979).  Yet in *Burdick v. Takushi*, 504 U.S.

---

[12] Although we will give plaintiff the benefit of the doubt and analyze the complaint as an as-applied challenge, it in fact appears to be a facial challenge to the Gun-Free School Zone Act.  If this is so, then the complaint should be dismissed.  A facial challenge to a legislative Act is the most difficult challenge to mount successfully, since the challenger must "establish that no set of circumstances exists under which [the Act] would be valid." *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 467-68 (9th Cir. 2001) (quoting *U.S. v. Salerno*, 481 U.S. 739, 745 (1987)).  This heavy burden cannot be met by plaintiff, as the Gun-Free School Zone Act is plainly valid as applied to firearms on school grounds under *Heller*.

[13] Gerald Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv. L. Rev. 1, 8 (1972).

[14] *See also Marzzarella*, 614 F.3d at 96.

DEF.'S REPLY IN SUPPORT OF MOT. FOR J. ON THE PLDGS. – NO.: C 10-03799 RS   6

428, 436-37 (1992), the Court upheld Hawaii's complete ban on write-in voting as an incidental burden justified by the State's responsibility to regulate the election process.[15]

Here, section 626.9 places very little, if any, burden on plaintiff's right to bear arms for self-defense, because of the exceptions it contains. It places no restriction at all on his right to possess firearms in his home, loaded or unloaded. Cal. Penal Code § 626.9(c)(1). He may transport unloaded arms through a school zone, provided he keeps unloaded firearms capable of being concealed on his person in a locked container or a locked trunk. *Id.* at § 626.9(c)(2). If he reasonably believes that he is in grave danger and has obtained a restraining order, he may carry a firearm in a school zone. *Id*. at § 626.9(c)(3). And if none of the other exemptions applies, he can apply to school authorities for an exemption, explaining why he feels he needs to carry a weapon for self-defense. *Id*. at § 626.9(b). By his own admission, plaintiff offered no such explanation when he applied to defendant for an exemption. Pl.'s Compl., Ex. A. Thus, the burden on this plaintiff's right to bear arms is incidental at best.[16]

**B.    Section 626.9 Satisfies Intermediate Scrutiny as a "Reasonable Time, Place, and Manner" Regulation**

As plaintiff acknowledges, even with the fundamental right of free speech, the Court has always allowed government to impose reasonable time, place, and manner restrictions on protected speech, just as the *Heller* Court made clear that the Second Amendment does not ensure a right to bear arms "in any manner whatsoever and for whatever purpose." 554 U.S. at 626. This test, which is a form of intermediate scrutiny, applies to content-neutral regulations and generally requires that they be narrowly tailored to serve a significant governmental interest. *Marzzarella*, 614 F.3d at 97-98.

As demonstrated above, the *Heller* Court carved out schools as a sensitive place where the Second Amendment does not apply. Plaintiff takes issue with this, but he is even more unhappy with the Act's prohibition of firearms within the 1,000-foot protective school zone, arguing among other things that it is not a reasonable time, place, and manner restriction. *See, e.g.*, Opp. at 10-11. If

---

[15] For other examples, *see* Winkler, 105 Mich. L. Rev. at 696-700.

[16] As discussed more fully in Defendant's Objections to Plaintiff's Evidence, plaintiff's exhibit purporting to show the amount of territory covered by the City's gun-free school zones is unauthenticated hearsay and inadmissible on a motion for judgment on the pleadings.

DEF.'S REPLY IN SUPPORT OF MOT. FOR J. ON THE PLDGS. – NO.: C 10-03799 RS            7

the Court does not agree that the Supreme Court meant to include a protective zone within the school exception in *Heller*, then it should ask whether prohibiting plaintiff from carrying a firearm within 1,000 feet of a school is a reasonable restriction.

To answer that question, the First Amendment test is instructive, although by no means a perfect fit. First, it is not at all clear that the "content-neutral" prong of the First Amendment test can usefully be applied to the right to keep and bear arms. As noted above, the *Heller* Court clearly said that the Second Amendment does not protect the right to carry any kind of arms whatsoever, and there can be little doubt that the Court would uphold a ban on private possession of assault weapons or machine guns. Even when one limits the question to weapons that were commonly available in the 18th and 19th centuries, the Court has discussed approvingly its earlier decision in *U.S. v. Miller*, 307 U.S. 174 (1939), holding that a short-barreled shotgun "was not eligible for Second Amendment protection" and noted that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." 554 U.S. at 621-22, 626. Thus, the Second Amendment does not require that a reasonable regulation be weapon-neutral.

That leaves the other two parts of the test: that the regulation be narrowly tailored and that it serve a significant governmental interest.

### 1. The governmental interest is not only significant, but compelling

Because it is impossible to determine whether a regulation is narrowly tailored to serve a governmental interest without first identifying that interest, we begin with the purpose behind section 626.9, which is to create a safe zone around a school in order to protect those who are attending or visiting it, particularly the children.

The California Gun-Free School Zone Act is modeled after the federal Gun-Free School Zone Act.[17] Congress set forth explicit findings in the federal act to explain its purposes, including

---

[17] The federal act was originally enacted in 1990, and amended in 1995 after it was found unconstitu–tional under the Commerce Clause by the Supreme Court in *U.S. v. Lopez*, 514 U.S. 549 (1995). Because of the close similarities between section 626.9 and the federal act, a ruling that the state statute violates the Second Amendment would essentially mean that the federal statute does as well.

that:

- "firearms . . . have been found in increasing numbers in and around schools, as documented in numerous hearings in both the Committee on the Judiciary[,] the House of Representatives and the Committee on the Judiciary of the Senate";
- "ordinary citizens and foreign visitors may fear to travel to or through certain parts of the country due to concern about violent crime and gun violence, and parents may decline to send their children to school for the same reason"; and
- "the occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country." 18 U.S.C. §§ 922(q)(1)(C), (E), (F).

These rationales apply with equal force to California's law. *See* Def.'s Br. at 8-9; Opp. at 3-4 (quoting Assem. Comm. on Pub. Safety Bill Analysis, A.B. 645, 1993-94 Legis. Sess. (Cal. Apr. 20, 1993)).

There is more, however. The people of California believe that the right to safe schools is of such paramount importance that they enshrined it in the State Constitution in 1982. Article I, section 28(f)(1) of the California Constitution provides, "All students and staff of public primary, elementary, junior high, and senior high schools, and community colleges, colleges, and universities have the inalienable right to attend campuses which are safe, secure and peaceful." An act of gun violence on or near school grounds is thus intolerable for our society, and the State has an imperative interest in providing a safe environment for school children in areas surrounding schools.

Plaintiff thinks otherwise, however. He argues that "[t]here is nothing in the record to indicate that children *while engaged in education* are more deserving of protection than any other person engaged in his or her daily life." Opp. at 7 (emphasis in original). That view, of course, ignores the courts' repeated approval of laws that single out children for special protection, from those involving child pornography to child abuse. *See, e.g.*, *Ginsberg v. State of New York*, 390 U.S. 629, 640 (1968) (citing "society's transcendent interest in protecting the welfare of children" as basis for justifying the broader regulation of pornography sold to children); *U.S. v. Juvenile Male*, 595 F.3d 885, 901 n.12 (9th Cir. 2010) (citing the "special protections accorded juveniles" as basis for remanding case to consider whether juvenile's confession was unlawful); *Lozano v. City of Hazleton*, 620 F.3d

DEF.'S REPLY IN SUPPORT OF MOT. FOR J. ON       9
THE PLDGS. – NO.: C 10-03799 RS

170, 222 (3d Cir. 2010) (striking down local ordinance that conflicted with federal law providing "special protections" to abused undocumented children). It also ignores the fact that, unless their parents are willing to school them at home, children are compelled to attend school, where they are put at risk not only when they are gathered in the school building, but as they come and go from school. Finally, children by their very nature lack both the skills and judgment to protect themselves, from adults or even from each other. When they are gathered in large numbers at a school, they are at their most vulnerable.

These reasons only go to the question of safety. There is the additional governmental interest, however, in preserving the educational environment itself. As noted earlier, the presence of an adult with an open handgun within 1,000 feet of a school will surely cause panic and, because school authorities have an obligation to protect their students, will probably require that the school be locked down and all learning cease until authorities are able to determine whether a threat exists. If that were to become a frequent occurrence, school may as well be adjourned.

### 2. The regulation is narrowly tailored to the government's interest

The most important thing to keep in mind about the "narrowly tailored" prong of the reasonable time, place, and manner test is that the "fit" between the regulation and the government interest need not be perfect; it must only be reasonable. *Marzzarella*, 614 F.3d at 98.[18] In this case, the fit is more than reasonable.

As discussed in Part A above, section 626.9 includes exemptions that allow plaintiff to possess firearms in his home and to transport them through school zones, as well as the safety valve that allows school officials to authorize an individual to carry a firearm in a school zone. In addition, the Act creates exceptions for individuals who have already gone through a more intensive vetting process under either the concealed carry licensing laws (Penal Code §§ 626.9(l); 12050 et al.) or other laws regarding peace officers, security officers, and the like. Penal Code §§ 626.9(c)(4), (d), (l), (m),

---

[18] *See also Peruta v. County of San Diego*, No. 09CV2371-IEG, 2010 WL 5137137 (S.D. Cal. Dec. 10, 2010), where the District Court recently used a similar intermediate scrutiny test in upholding California Penal Code § 12050, which governs licenses for concealed weapons, against a Second Amendment challenge.

(o). It also excepts individuals who can demonstrate with a court-imposed restraining order that they have special reason to believe they are in grave danger. *Id*. at § 626.9(c)(3); *see also* Penal Code § 12025.5(a) (providing justification for violation of section 12025's prohibition of concealed handguns for same individuals).

Plaintiff argues, however, that the Act is not narrowly tailored, saying that the 1,000 foot distance is "excessive," disallowing self-defense unless there is a restraining order is "misguided," and allowing for loaded, concealed handguns while preventing unloaded, openly carried handguns "lacks logic." Opp. at 7. Plaintiff has not shown that a gun could not be used to inflict significant harm on either children or adults as they gather within 1,000 feet of a school, and as demonstrated above, courts have approved similar distances as a means to protect schoolchildren from other kinds of threats. And although plaintiff may disagree with the Legislature's decision to rely on the courts to determine whether an individual requires a restraining order in order to carry a gun outside a home or business in a school zone, the limitation is a reasonable way of balancing the need for individual self-protection against the government interest in protecting schoolchildren.

Plaintiff's failure to see the logic in the Act's distinctions between unloaded and loaded firearms, concealed versus unconcealed weapons, and rifles and shotguns versus handguns, is because he ignores the fact that the gun control laws already in place in California govern the Act. For example, section 626.9(e)(2) relies on the same broad definition of firearm found in Penal Code section 12001(b): "any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." The Act allows an exception for the same types of concealed handguns already allowed in the state of California: those carried by people licensed to do so in the state, and those that are in a locked container or a locked trunk. It also excepts "the otherwise lawful transportation" of other types of firearms as allowed under state law (§ 626.9(c)(2)), like unconcealed, unloaded firearms which do not violate Penal Code section

12031's ban on carrying loaded firearms in public.[19] Courts have upheld these provisions even after *Heller* and *McDonald*,[20] and the Legislature's decision to rely on them while restricting and penalizing the possession of unlicensed concealed weapons and loaded firearms in a school zone is far from unreasonable.

Plaintiff also complains that the Act has no exceptions for times when schoolchildren are not present, arguing that schools are only in session nine months of the year and for roughly a third of the day. Opp. at 11. The lack of a time restriction on the law does not render it overbroad, however. Schools are often used by school staff, schoolchildren, and their families from early morning through late at night for extracurricular activities, meetings, and other events. Further, they are often used as community meeting places for other organizations throughout the year. Indeed the Civic Center Act provides that schools may be used for public, literary, scientific, recreational, educational or public agency meetings or other discussions, religious services, child care or day care programs, examinations, sports activities, a community youth center, and patriotic ceremonies. Cal. Educ. Code § 38131(b). The Education Code specifically provides:

> There is a civic center at each and every public school facility and grounds within the state where the citizens, parent teacher associations, Camp Fire girls, Boy Scout troops, veterans' organizations, farmers' organizations, school-community advisory councils, senior citizens' organizations, clubs, and associations formed for recreational, educational, political, economic, artistic, or moral activities of the public school districts may engage in supervised recreational activities, and where they may meet and discuss, from time to time, as they may desire, any subjects and questions that in their judgment pertain to the educational, political, economic, artistic, and moral interests of the citizens of the communities in which they reside.

*Id*. at § 38131(a).

Finally, plaintiff complains that the law is overbroad because it has an exception for on-

---

[19] This is apparently the basis for plaintiff's claim that high-powered rifles "are not restricted by school zones and can be brought right up to the edge of school grounds." Opp. at 13. It is one thing, how–ever, to be transporting a firearm from one location to another and quite another to be in continual and open possession, which is what plaintiff claims the right to do when he argues in favor of "open carry."

[20] *Peruta*, 2010 WL 5137137, at **4-6, 8 (county's concealed weapon permit policies were constitutional under *Heller*); *People v. Yarbrough*, 169 Cal.App.4th 303, 311-14, 319 (2008) (finding both the concealed carry law and the prohibition against carrying loaded firearms in public constitutional in light of *Heller*).

1  campus shooting ranges.  Opp. at 12.  Section 626.9(n) does in fact say that the Act "does not apply to
2  an existing shooting range at a public or private school or university or college campus," but that does
3  not make it underinclusive or unreasonable.  First, intermediate scrutiny does not usually turn on
4  whether a regulation is underinclusive, but whether it is overinclusive, burdening the protected right
5  more than is reasonably necessary.  *See Marzzarella*, 614 F.3d at 97-98 (describing different
6  articulations of intermediate scrutiny).  Second, under the Act, the shooting range must be "existing,"
7  which presumably means that it must have been in existence when the Act was first passed.  The
8  purpose of the exception, therefore, was to grandfather in existing shooting ranges at public or private
9  schools and colleges.  Finally, even if the exception is not limited to shooting ranges in existence at the
10 time of passage, the Legislature could rationally permit schools and colleges to teach students safe gun
11 use, in a controlled environment, as opposed to exposing students to guns on the streets.

### 3. Practices in other states

Plaintiff points out that other states "have treated schools in a variety of different manners with respect to firearms."  Opp. at 12.  After reviewing these approaches,[21] he argues, "It is difficult to conclude that schools and school zones are presumed to be sensitive places when 20% of states allow loaded firearms to be carried upon school grounds and the majority of states allow loaded firearms to be carried up to the edge of school grounds."  *Id*. at 13.

The problem with plaintiff's argument, of course, is that the Supreme Court has in fact concluded that schools are sensitive places for purposes of the Second Amendment, and neither this nor any other court is in a position to question that.

### 4. The wisdom or efficacy of the Act are issues for the Legislature, not the courts

Plaintiff offers evidence, all of it objectionable, that the Act "did not achieve the desired effect of reducing the number of shootings at and around schools."  Opp. at 4.  Even if this evidence were not otherwise inadmissible, it would not be relevant to the constitutional validity of the Act. First, it proves nothing about what things would have been like *without* the law or whether dangerous

---

[21] Plaintiff offers no citations or other authority for his lists of states that either allow firearms on school property or do not prohibit them.  Opp. at 12-13.  Without such authority, the lists are no more than bald assertions.

neighborhoods have improved because the law exists.  Second, intermediate scrutiny does not turn on the efficacy of a law but whether it is reasonably related to a significant government interest.  As the *Peruta* court wrote:

> The Court acknowledges Plaintiffs' argument that many violent gun crimes, even a majority, are committed by people who cannot legally have guns, and the ongoing dispute over the effectiveness of concealed weapons laws.  *See* Moody Decl.  But under intermediate scrutiny, Defendant's policy need not be perfect, only reasonably related to a "significant," "substantial," or "important" governmental interest.

*Peruta*, 2010 WL 5137137, at *8.

Once again, we return to the fact that the Supreme Court has held that states can in fact prohibit firearms in schools, thereby ending the efficacy debate.  Even without the Court's pronouncement, however, it cannot seriously be argued that prohibiting firearms is not reasonably related to the government's significant interest in school safety, any more than one could argue that a 25 m.p.h. school speed zone is not reasonable because many drivers disobey it.  The relationship is clear; its wisdom is a matter for the Legislature.

## **CONCLUSION**

Plaintiff appears to have filed this lawsuit for no other reason than that he believes he has a constitutional right to carry an unloaded handgun in a school zone and demands to be allowed to do so.  Although it is clear that plaintiff has a constitutional right to keep a handgun—loaded or unloaded—in his home, he has no such right to carry an unloaded gun wherever he wishes.  In particular, he has no right to carry a gun within 1,000 feet of a place where children are gathered to be educated.  The motion for judgment on the pleadings should be granted.

Dated:  December 23, 2010

Respectfully submitted,

REMCHO, JOHANSEN & PURCELL, LLP

By: _____/s/_____
     Robin B. Johansen

Attorneys for Defendant Carlos A. Garcia

(00133753)