1

**\*E-Filed 3/17/11\***

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                         SAN FRANCISCO DIVISION

9

10   KEVIN M. HALL,                              No. C 10-03799 RS

11             Plaintiff,

                                                 **CORRECTED ORDER GRANTING**
12        v.                                     **MOTION FOR JUDGMENT ON THE**
                                                 **PLEADINGS**
13   CARLOS A. GARCIA, in his official
     capacity as Superintendent of the San
14   Francisco Unified School District,

15             Defendant.

16   _____/

17

18

19                              I.  INTRODUCTION

20        Pro se plaintiff Kevin Hall contends that California's Gun-Free School Zone Act violates his

21   constitutional right to keep and bear arms under the Second Amendment.  Hall sought an exemption

22   under the Act to carry openly an unloaded handgun within 1000 feet of school property.  After his

23   request was denied, Hall filed suit against Carlos Garcia in his official capacity as Superintendent of

24   the San Francisco Unified School District.  Garcia presently moves for judgment on the pleadings

25   on the grounds that his denial of an exemption from the Act is constitutional.  After oral argument,

26   and for the reasons stated below, the motion for judgment on the pleadings is granted.

27

28

(left margin, vertical) **United States District Court** For the Northern District of California

## II.  BACKGROUND

California's Gun-Free School Zone Act of 1995 prohibits possession of a firearm in a place that a person knows, or reasonably should know, is a school zone without the written permission of the school district superintendent.  *See* Cal. Penal Code § 626.9(b).  Under the Act, a school zone encompasses the grounds of a public or private school engaged in kindergarten through twelfth-grade education and areas within 1000 feet of such property.  § 626.9(e)(1).  The Act contains several statutory exemptions from that general prohibition.  It does not apply to firearms possession "[w]ithin a place of residence or place of business or on private property."  § 626.9(c)(1).  For firearms capable of being concealed on a person, an individual may possess such a firearm in a locked container or in the locked trunk of a motor vehicle.  § 626.9(c)(2).  Possession of a firearm is not prohibited where a person has obtained a current restraining order and "reasonably believes he or she is in grave danger."  § 626.9(c)(3).  The Act also contains exemptions for some categories of persons authorized to carry concealed weapons.  § 626.9(c)(4).

Hall resides in San Francisco within 1000 feet of an elementary school.  In July 2010, he sent a written request to Superintendent Garcia seeking an exemption from the Act.  In his letter, Hall raises his civil right to keep and bear arms under the Second Amendment, but otherwise does not attempt to justify his request by citing specific reasons or circumstances necessitating the carrying of a firearm.  In August 2010, the Senior Deputy Legal Counsel for the school district, replying on behalf of Garcia, responded and stated simply that the Superintendent had determined not to grant Hall's request for an exemption.  Shortly thereafter, Hall filed suit pursuant to 42 U.S.C. section 1983 claiming that Garcia's denial of an exemption violates his constitutional rights under the Second and Fourteenth Amendments.[1]

---

[1]   Hall's complaint also alleges that Garcia violated 18 U.S.C. section 242.  That statute establishes criminal penalties for civil rights violations and may not serve as a basis for a civil claim.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

United States District Court
For the Northern District of California

III.  LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the complaint after an answer has been filed."  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004).  It is "functionally identical" to a Rule 12(b) motion to dismiss for failure to state a claim, differing only in that it is filed after pleadings are closed.  *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); Fed. R. Civ. P. 12(c).  In evaluating a motion for judgment on the pleadings, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (citation omitted).  On that basis, if no relief can be granted, the moving party is entitled to judgment as a matter of law.  *Fairbanks N. Star Borough v. United States Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

IV.  DISCUSSION

The Second Amendment confers an individual right to keep and bear arms.  *See District of Columbia v. Heller*, 554 U.S. 570, 2799 (2008).  Under the Due Process Clause of the Fourteenth Amendment, this right is equally protected against infringement by the States.  *See McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010).  Like other individual rights, the right to keep and bear arms "is not unlimited."  554 U.S. at 626 (explaining that, historically, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

In determining the constitutionality of myriad firearm regulations, the Supreme Court declined to set forth rigid guidelines for the lower courts.  Instead, the Court in *Heller* clarified that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  554 U.S. at 626-27.  Moreover, the Court characterized these restrictions as forming part of a non-exhaustive list of "presumptively lawful regulatory measures." *Id.* at 627 n.26.

United States District Court
For the Northern District of California

Where a challenged statute apparently falls into one of the categories signaled by the Supreme Court as constitutional, courts have relied on the "presumptively lawful" language to uphold laws in relatively summary fashion. In evaluating a challenge to 18 U.S.C. section 922(g)(1), which prohibits the possession of firearms by any person convicted of a crime punishable by more than one year, the Ninth Circuit cited the above language from *Heller* and concluded that "felons are categorically different from the individuals who have a fundamental right to bear arms." *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010). In upholding a conviction for carrying a concealed weapon on an airplane, the Ninth Circuit observed that "[t]he Supreme Court specified that nothing in [the *Heller* opinion] was intended to cast doubt on the prohibition of concealed weapons in sensitive places." *United States v. Davis*, 304 Fed. Appx. 473, 474 (9th Cir. 2008) (unpublished). In considering whether dispossessing misdemeanants convicted of domestic violence offenses of firearms is constitutional, the Eleventh Circuit stated that it saw "no reason to exclude § 922(g)(9) from the list of longstanding prohibitions on which *Heller* does not cast doubt." *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010).

In *Nordyke*,[2] the Ninth Circuit evaluated the constitutionality of an ordinance broadly prohibiting possession of guns and ammunition on county property as a regulation affecting "sensitive places." *See Nordyke v. King*, 563 F.3d 439, 460 (9th Cir. 2009); 575 F.3d 890 (9th Cir. 2009) (ordering rehearing en banc); 611 F.3d 1015 (9th Cir. 2010) (remanding back to panel after *McDonald*). Plaintiffs in that case had previously operated gun shows at the county fairgrounds and filed suit seeking to continue bringing guns onto county property for that purpose. 563 F.3d at 443-44. The Court first determined that the regulation at issue did not burden the core Second Amendment right as analyzed in *Heller*, which it summarized as "the ability of individuals to defend themselves in their homes with usable firearms." *Id.* at 460. The Court explained that schools and

---

[2] The *Nordyke* opinion was issued after the Supreme Court's *Heller* decision, but before *McDonald*. Prior to addressing the constitutionality of the county ordinance, the panel held that the Second Amendment was incorporated by the Due Process Clause of the Fourteenth Amendment. 563 F.3d at 457. The Ninth Circuit set the case for rehearing en banc. 575 F.3d 890 (9th Cir. 2009). After *McDonald* was decided by the Supreme Court, the Ninth Circuit remanded the case back to the same panel. 611 F.3d 1015 (9th Cir. 2010). Although its decision is vacated, the panel's analysis of laws regulating guns in sensitive places has been recognized by other courts. *See, e.g.*, *Brown v. United States*, 979 A.2d 630, 641 (D.C. Cir. 2009); *United States v. Masciandaro*, 648 F. Supp. 2d 779, 790-91 (E.D. Va. 2009).

United States District Court
For the Northern District of California

government buildings presumably were considered "sensitive places" by the Supreme Court because "possessing firearms in such places risks harm to great numbers of defenseless people (e.g., children)." *Id.* at 459. The Court determined that open, public spaces "fit comfortably within the same category as schools and government buildings." *Id.* at 460. Thus, it held that prohibiting the possession of firearms on municipal property "fits within the exception from the Second Amendment for 'sensitive places' that *Heller* recognized." *Id.*

If a given regulation does not qualify as "presumptively lawful," then the question remains as to what level of constitutional review the law must survive. While the Supreme Court held that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," it declined to specify, even in that instance, the applicable form of heightened scrutiny. 554 U.S. at 635. Instead, the Court stated that the District of Columbia's total ban on handgun possession in the home would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." *Id.* at 628. Thus, even where the restriction at issue implicates the "core" right under the Second Amendment, it is far from clear that it must survive the most exacting form of review, that is, strict scrutiny.[3] In *McDonald*, the Supreme Court suggested the incorporation of the Second Amendment "does not imperil every law regulating firearms." 130 S. Ct. at 3047. It follows that most regulations, especially those outside the core Second Amendment right, may not be subject to strict scrutiny.

In considering constitutional challenges to criminal convictions under the federal firearms statute, various courts as noted below have determined that the appropriate form of review is intermediate scrutiny. Under that test, a challenged statute must be substantially related to an important governmental interest. *See, e.g.*, *McComish v. Bennett*, 611 F.3d 510 (9th Cir. 2010) (applying intermediate scrutiny in a First Amendment context). Both the Seventh Circuit and the Fourth Circuit considered the constitutionality of dispossessing persons convicted of domestic

---

[3] Furthermore, in refuting the dissent's contention that hundreds of judges had relied on Supreme Court precedent suggesting that the Second Amendment protects the right to keep and bear arms for certain military purposes, the Court remarked that "it should not be thought that the cases decided by these judges would necessarily have come out differently under a proper interpretation of the right." *Heller*, 554 U.S. at 624 n.24.

United States District Court
For the Northern District of California

violence misdemeanors under 18 U.S.C. section 922(g)(9) (the same statute upheld by the Eleventh Circuit without resort to means-end scrutiny). *See United States v. Skoien*, 614 F.3d 638, 639 (7th Cir. 2010) (en banc opinion); *United States v. Chester*, 628 F.3d 673, 674 (4th Cir. 2010). In applying intermediate scrutiny, the Seventh Circuit held that "preventing armed mayhem" was an important governmental objective and that "logic and data" provided a necessary connection between that interest and the misdemeanant-in-possession law. 614 F.3d at 642. The Fourth Circuit also adopted intermediate scrutiny, but remanded the case for further proceedings. On the record before it, the Court held that the government had not met its burden of "establishing a reasonable fit between the important object of reducing domestic gun violence" and permanently dispossessing misdemeanants. 628 F.3d at 683. Although the Third Circuit applied intermediate scrutiny to the prohibition against possessing a firearm with an obliterated serial number pursuant to 18 U.S.C. section 922(k), it noted that the law would be constitutional even under strict scrutiny. *See United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), cert. denied, 131 S. Ct. 958 (2011).

In this case, Hall challenges the requirement of the Gun-Free School Zone Act that he receive permission from the school district superintendent to carry openly a firearm within a school zone. Based on the Supreme Court's reference to laws forbidding firearms in "sensitive places such as schools" as presumptively legal, Garcia argues that the State may make schools "completely off-limits" for purposes of the Second Amendment. In his view, only where a law interferes with protected conduct should a court look to apply some form of heightened scrutiny. *See, e.g.*, *Marzzarella*, 614 F.3d at 89 (adopting a two-stage approach to Second Amendment inquiries). In other words, he contends that just as some speech is outside the First Amendment, some gun-related conduct simply is unprotected by the Second Amendment. Furthermore, Garcia claims that openly carrying a handgun in a school zone constitutes such unprotected activity.

One district court, in considering the federal Gun-Free School Zones Act,[4] upheld the law without reaching the application of any heightened form of scrutiny. *See United States v. Lewis*, 2008 U.S. Dist. LEXIS 103631 (D.V.I. 2008) (concluding that "Heller unambiguously forecloses a

---

[4]    California's statute was modeled on the federal Gun-Free School Zones Act of 1990. *See People v. Tapia*, 129 Cal. App. 4th 1153, 1164 (2005) (citing to legislative history of the California Act indicating it was intended to codify the 1000 foot gun-free zone of 18 U.S.C. section 922(q)).

1  Second Amendment challenge to [a conviction under the federal Act] under any level of scrutiny").

2  For the same reason that schools are sensitive places—the presence of large numbers of children

3  either at school or traveling to and from it—possession of firearms within some distance around

4  such locations similarly presents the risk of danger and disruption.  The question is whether

5  establishing the gun-free zone at 1000 feet also qualifies as a presumptively legal regulation.  When

6  it referred to schools as sensitive places, the Supreme Court was certainly cognizant of the federal

7  Gun-Free School Zones Act, which imposes criminal penalties for possession of a firearm within

8  1000 feet of school grounds.[5]  *See* 18 U.S.C. §§ 922(q); 921(a)(25) (defining "school zone").

9  Moreover, the Supreme Court has previously upheld an ordinance imposing a 1000 foot zoning

10  restriction, even where it affected First Amendment rights.  *See*, *e.g.*, *Renton v. Playtime Theatres*,

11  475 U.S. 41, 43 (1986) (considering regulation prohibiting adult theaters from locating within 1000

12  feet of residential areas, churches, parks, and schools).  In that case, however, the zoning ordinance

13  was not exempt from scrutiny, but instead was held constitutional under the applicable test.  Thus,

14  with respect to setting the gun-free zone at 1000 feet, some level of constitutional review is

15  seemingly appropriate.

16          Under any of the potentially applicable levels of scrutiny discussed above, the Gun-Free

17  School Zone Act constitutes a constitutionally permissible regulation of firearms in public areas in

18  or near schools.  As a starting point, restricting possession of firearms in school zones does not

19  burden the core "right of law-abiding, responsible citizens to use arms in defense of hearth and

20  home."  *Heller*, 554 U.S. at 635.  Based on an express exemption codified in the Act, the law has no

21  impact on Hall's right to possess a handgun at home or on any other private property.  Hall also is

22  not restricted from carrying a firearm in a school zone in a locked container or in the locked trunk of

23  a car.

24          The government's stated interest, of preventing harm to children, is well-established as more

25  than an important governmental objective.  As the Supreme Court has observed, "It is evident

26  _____

27  [5]      The federal Gun-Free School Zones Act of 1990 was held unconstitutional by the Supreme
   Court as outside the scope of Congress' commerce clause power. *See United States v. Lopez*, 514

28  U.S. 549 (1995).  Congress subsequently re-enacted the statute including a nexus to interstate
   commerce. *See* 18 U.S.C. 922(q).

United States District Court
For the Northern District of California

beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling." *See New York v. Ferber*, 458 U.S. 747, 756-757 (1982) (internal quotation marks and citation omitted). Thus, the Court has upheld laws with the purpose of protecting children, "even when the laws have operated in the sensitive area of constitutionally protected rights." *Id.* (discussing cases including *FCC v. Pacifica Foundation*, 438 U.S. 726, 749 (1978), where regulation of indecent broadcasting to all audiences was justified by the government's interest in the "well-being of its youth").

Furthermore, the provisions of the Act are substantially related to the objective of creating a safe zone around schools. While Hall contends that the law unreasonably burdens his right to bear arms in self-defense, under *Heller* the right to bear arms in public is not unqualified. *See* 554 U.S. at 595 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose."). In Hall's view, the State must bear the burden of demonstrating that he is disqualified from possessing a handgun in a school zone. In rejecting his request for an exemption from the Act, Garcia provided no basis for the denial. At oral argument, Hall suggested that, as a law-abiding, responsible citizen, Garcia would be unable to provide a legitimate reason. In that respect, however, Hall is not unlike any number of San Francisco residents who may seek to carry openly a handgun in a school zone.

If the Superintendent were required to grant exemptions to all, the practical effect would be to undermine the existence of a gun-free zone around schools. Instead, the law provides an express exemption where a person has obtained a current restraining order and reasonably fears for his or her safety. Separately, the Superintendent possesses the authority to grant an exemption from the Act. In this case, Garcia's decision not to extend such permission merely on request bears a substantial relationship to the important objective of protecting children on and near schools from exposure to firearms. Accordingly, the denial of his request for an exemption under the Act does not violate Hall's Second Amendment right.

V.  CONCLUSION

Under California's Gun-Free School Zone Act, the Superintendent's denial of an exemption allowing Hall to carry openly a handgun in a school zone is constitutional.  Garcia's motion for judgment on the pleadings is granted.  Therefore, Garcia's objections to Hall's evidence are denied as moot.

IT IS SO ORDERED.

Dated:  3/17/11

_____

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California